Good morning. Good morning. May it please the court, my name is Robert Tyler. I represent Calvary Chapel Bible Fellowship. I'd like four minutes for a rebuttal, please. This case is about the fundamental requirement under the Religious Land Use and Institutionalized Persons Act passed in 2000 unanimously by Congress that requires that government agencies treat religious assemblies on equal terms to non-religious assemblies. And we ask this court to dismiss the county's argument, which really is illusory, and require that religious assemblies and land use religious assemblies as a land use category be permitted by way of a plot plan, just like special occasion facilities in the county of Riverside are allowed by way of a plot plan. So can I ask about that? Because that's, that's, I mean, first of all, could you, is there a reason you didn't bring a substantial burden claim? I mean, 90% of these RLUPA cases fall under substantial burden that would have seemed to have been stronger. And I'm just wondering if there's a reason why that wasn't brought. Yeah, absolutely, Your Honor. The reason why is because the face of the ordinance violates equal terms. The church has been through nine years of attempting to get through the political process. So do you concede that this is a facial challenge that we're looking at right here? Absolutely. This is a facial challenge on equal terms, not on substantial burden. It's possible that this could turn into a substantial burden claim down in the future, because if this court agrees that, that equal terms requires that a religious assembly be permitted on equal terms as a secular or as a special occasion facility, we'd be permitted by way of a plot plan, and the discretionary plot plan process goes through, and then the church were to be denied and it were to be deemed a substantial burden, that becomes a substantial burden case, but not until after the hearing on the plot plan. So that's why you didn't bring a substantial burden claim, because you hadn't been denied yet. You're just saying, hey, here on the face. So that does get to the question then of explain exactly how you're being treated unequally, because there's a big dispute here where the county's saying, hey, you guys, the ordinance allows religious organizations, and you're saying, no, it doesn't. It's an odd, it's an odd posture to be in, and so why do you think that you're precluded on the face of the statute? Well, first of all, this new argument that churches are permitted, that wasn't brought up until appeal. Down at the lower court, it has been the county's position all along that churches are not permissible as special occasion facilities. Well, there's some dispute on that in the lower court, and one of the questions I had on that, there's a 30B6 witness from the county that appears, I forget, I don't have the name in front of me, but he does appear to say that churches are not permitted, and one of the questions I had was to what degree does that bind the county in their interpretation of the statute? Yes, we've cited to a case or two in our briefing that the admissions of a 30B6 witness are binding on the county. Are they really binding on the county? Because it seems to me they may be an admission in the court, but that if you were to go out and apply for a special permit and someone else were to challenge it, I'm not sure that it would be binding on the county in that way outside of the course of the litigation. Well, your honor, I can understand that, but let's take a look at the mounds of the evidence, mounds of evidence here, because it's not just the 30B6 witness, Mr. Larry Ross, it's also the other 30B6 witness. She's got a difficult last name, so I'll go by Paivon is her first name. So both 30B6 witnesses agree that churches were not permitted, they could not even submit a plot plan under the existing zoning ordinance down at the district court level. Furthermore, the uncontroverted facts when the motions for summary judgment were submitted, I direct your attention to 30B6 and number 7, a religious assembly is only permissible in the CV zone if it pre-existed the the Citrus Vineyard zone as it was amended, and number 6 says currently usage of the, I'm quoting, currently usage of real property by a church exclusively as a church is prohibited in the wine country winery zone, and that was discussed that, because exclusively as a church, that also seems to be one of the touch points here. You have a specific definition of how a church should operate. The county seems to have a different one. You seem to be saying, look, we need to be able to operate as a church at all times in all places for all things. The county seems to take a different definition of that and say, well, no, you can be a church as long as you comply with the special occasion facility. If the county said that you could apply as a special occasion facility, is your view that that would still impinge upon your right to operate as a church in the way that you want to operate? Yes, absolutely. This newfound concept that somehow a church can now apply as a special occasion facility, this is new. This is new on appeal. It's a new argument and it would impinge because one of the definitions of a special assembly, a special occasion facility, limited purpose in exchange for compensation. There's no limit. I don't see a limited purpose. Sorry, I used the wrong term. A specific period of time. Yes, a specific period of time. In return for compensation. Why is that hard for you to comply with? The church is a non-profit organization that allows people to come for free. It's not in exchange for compensation. Well, it doesn't say you have to charge the parishioners. It says that you have to, or does it? I mean, I guess that's one of the questions for public assembly for a specific period of time in return for compensation. Here's one of the questions and I'm going to ask the county this. Why couldn't you get a special permit, rent this facility out to an organization that you guys operate, you pay a dollar a month, that is, or a dollar a year, that's a return for compensation for a specific period of time and then you do whatever you want with it as far as running it as a church in the way that you want to run it? Yeah, the testimony is very clear from the 30B6 witnesses, both of them, that a tenant who rents a facility would not be able to operate that facility exclusively as a religious purpose. Larry, this is all though we're speculating. You have an application pending, right? And we don't know what's going to happen on that. But we're speculating that you're going to be denied and then you would have an as-applied challenge, right? No, I'm not speculating that we're going to be denied. I'm filing a facial challenge to the face of the ordinance irregardless. Well, but if we don't think you win facially, then you could come back as-applied. We could. We could come back as-applied. But that would be speculative at this point what the as-applied challenge would be. That's correct. Let me point out that I think what's illusory here is that somehow the church can be a special occasion facility. What is the purpose of our LUPA? The purpose of our LUPA is to protect religious land use as a category. For example. But hold on, that's not the claim that you've brought here. You've brought it to say we need to be treated on equal terms with someone else. And so when a county comes in and says, well, you can get a special occasion facility and you say, well, we're not being treated the same as another special occasion facility. I think that's my initial question. You're right if you'd brought a substantial burden claim. But when you bring an equal terms claim, it's not that we have to allow you to be a church in every sense of the word. It's that we have to give you the same rights as we would give to someone in a secular position. Your Honor, I would disagree a little bit here in that if you take a look at Centro Familiar, it says that, I'll quote, it says, the city may be able to justify some distinctions drawn with respect to churches if it can demonstrate that the less than equal terms are on account of a legitimate regulatory purpose, not the fact that the institution is religious in nature. And that is exactly what we're dealing with here. Well, but that's my whole problem, is where are you treated on less than equal terms? Because if we are a secular assembly, we can occupy permanently as a secular assembly. The only distinction is that it's religious. But I don't see that on the face of the ordinance. Because the face of the ordinance says all you have to do is apply for a specific period of time in return for compensation. And that applies to a religious organization. There's plenty of religious organizations that rent their space. You have the ability to look at the mounds of evidence on how the county interprets it. The face law says so. They did in the third circuit, seventh circuit. And that's exactly what's happened. If that were true, we wouldn't be here today because we would have applied as a special occasion facility a long time ago, nine years ago. There's a reason why we're here today. It's because churches were not permitted because we are exclusively religious, because a religious assembly is exclusively religious. Let me give you an analogy if I could. But that doesn't come on the face of the statute. That comes in through some interpretation of some of the evidence that was taken in this case. Is that correct? I would disagree, your honor, that it is not on the face of the statute because special occasion facilities is specifically defined. It has a specific definition. I don't understand how you don't fit within that definition. How does your church, how does your building a church, a separate church, it sounds like, or an expanded church, how does that not fit within the definition of a special occasion facility? Let's take away the evidence. I understand we got the evidentiary problem. But on the face of the statute, how can you not operate under a special occasion facility? Your honor, it should, frankly. It should because when you take a look at uses that should be permitted, it should be. But the reality of it is that we wouldn't be here today. It would be an extreme injustice at this point if this court said, well, you know, it appears that you should have been permitted. When in reality, your honor, it's been nine years. And that's why we're here. It would be such an extreme injustice if you didn't look to what they've been saying all of this time, and especially in the district court level. Can I give you an analogy what this is? You can, but if you want to save some time for rebuttal, you might want to hear what the other side said and come back. You can use your time any way you want. I appreciate that. Thank you. Okay. Well, I'm looking forward to hearing that analogy. Hang on to it. I'll be with you. Good morning, your honors. Alan Diamond for County of Riverside. Good morning. I just want to start because it's very relevant the way the argument was left with reading something from the complaint, Calvary's complaint. Calvary now seeks to build a new church sanctuary on its 23.4 acre profit, where it can accommodate the special occasions of its members like weddings and also a growing congregation. So you would think Calvary was opening a monastery, not a church. And I think what this shows is that its expansion is almost exactly pertinent to what a special occasion facility is. Well, you've basically already said you're not going to grant. The county has already said you're not going to grant the request that they currently have because your view, the county's view, is that it's far too expansive and doesn't comply in all respects. You called it a mini city on the parcel. One of the problems, and maybe that just goes to the as applied challenge, so we shouldn't consider it, but are there aspects that the county will allow Calvary Church to build that will comply with their desire to use it as a church? Absolutely. That's what a special occasion facility does. Well, first remember, they already have an existing church and it is the county's position, we've stated it, that that can exist in perpetuity even though it's non-conforming under section 18.8 of the ordinance. And now they have 23 more acres to play with and all they have to do is meet the footprint limitations of the special occasion facility. And once they do that, as long as they do that, they can hold worship services, they can do everything that a church would do. It may be a little confusing to say they can't be a church, and I know that that sounds confusing. It just means they can't be a separate building as a church other than through the limitations of a special occasion facility. Well, do you understand, and I'm only speaking hypothetically, this is a hypothetical, that you could prevail here. I beg your pardon? Do you understand hypothetically you could prevail here because this is a facial challenge, but that doesn't make you home free on an as-applied challenge in the future. Do you understand that? Well, I understand it hypothetically. Hypothetically? Right, because I... Well, I don't, we don't know what you're going to do. Well, not only that, but I am... But if we were, but do you understand that hypothetically if a court were to say, well, on a facial challenge you prevail, that doesn't end the inquiry down the road. They could still bring an as-applied and if if if you don't meet, if you don't follow the law on that, then you can be right back here. I certainly understand that they can bring an as-applied challenge, and I don't mean to sound arrogant about it, but I am fairly confident that there is nothing here that this ordinance does that in any way is hostile to religion or burdens religion. Well, they've, they've, well, there were, I think there were, there were the declarations that we talked about in this particular case, I think that Judge Nelson mentioned, and so if it were to come out that, I mean, you're saying they should be able to, technically, their application, they could, they could get it granted as it's written, but if it turns out, but I think those declarations seem to indicate otherwise. Well, two things. One is they're, an application that meets the footprint standards of a special occasion facility, the plot plan application, I don't, don't want to jump ahead of the process, but I see no reason why it wouldn't be granted. But you, but you would agree that Ross said something differently in his, in his deposition? You know, Your Honor, I, you had said, and I completely agree that that, that kind of statement isn't binding, but there's another reason it isn't binding, and that's because it was a pure legal conclusion. It wasn't a fact. And also, if you look at his testimony. So you would agree that Ross gave an invalid interpretation of the statute in his deposition? On that point, absolutely. And, and Ms. Nann, my own way of pronouncing his, her wonderfully complex name, is that, that she testified that churches can become special occasion facilities. You know, it's quite a weird situation that, that... Are there other churches that are permitted as a special occasion facility in the C.V. zone? Well, I know there are churches that have religious services. There are special occasion facilities as part of a winery that have regular services. And there, and there's no question, I, the, the county's position is absolutely that churches, and by the way, as I'm sure Your Honors understand, by churches, I mean all religious, you know, assemblies, that churches can be special occasion facilities. And I just read you their idea is to, in fact, have, have expansive special occasions, like wedding facilities, where they're going to be getting compensation. But you would say that the current plot plan, I'm assuming, does not comply with the footprint. That seems to be what you've said in your brief. And is that because of the administration building that they're planning to build? Or is that because of the church? Or is that all inclusive? Well, it's not because it's a church. I understand. But is the, is, is the church, is the church footprint that they plan to build, is that not in compliance? Or is it the administration building that's not in compliance? It's not the, it, well, first of all, they get to build one structure. Okay, and they have them down. In addition to a single-family dwelling. In addition to a single-family dwelling. So you don't have a problem with the single-family dwelling that they're proposing? None whatsoever. And I wanted to ask that, a special occasion facility, can you only get one special occasion facility per parcel? Could they ask for multiple permits of multiple special occasion facilities on the same parcel of land? I don't believe so, because that would really defeat the whole purpose of having a limited footprint. Well, would it? If you had 100, 100 acre parcel of land, presumably you could have two different special occasion facilities. I didn't see anything in the ordinance that prohibited it. And so that's why I was wondering. And, and this, a lot of these questions perhaps will go to the as applied challenge if it arises in the future. But that seems to me, I mean, if you're willing to represent here and you're representing it at the court, that churches are permitted under, under this reading. I mean, I think, you know, I think we would want to take that to the bank, but then I don't foresee that that's going to be the end to this case. It may well not be, but it's not unimportant to, to resolve this issue. I understand. Not just for the parties here, but for the integrity of RLUIPA. And what, so can you explain to me how a church fits within the definition of, of being used for a specific period of time in return for compensation? Well, as that quoted language that I just read, it get, it may get compensation or will get some compensation when it hosts wedding receptions. There can be. What if they don't charge any? I mean, what if they don't charge? What if they say, as a religious view, we don't want to charge for our wedding receptions. Would you then deny them because they're not receiving compensation? That would, that would then get, I suppose, to, and as applied on the face of it. Well, maybe, maybe not. I mean, if there are, and I haven't brought this up, but if you have a religious institution that says we, it's against our religious beliefs to take any form of compensation from our parishioners. I guess what I'm asking is in return for compensation, does that have to come from those who are using it? Or could that be something that is, my example where Calvary Church applies for it. They rent it out to Calvary, you know, a separate Calvary Church institution and they run it for free. Would you say that that violated this provision because you weren't charging parishioners or users of it as opposed to just the, the tenant? They seem to point to evidence where you said you can't run a church as a tenant. And I'm wondering if you're disavowing that position. Disavowing that, they can, they can get compensation any way they can. And by the way. And $1 a year would be enough. I, I believe so, yes. I think that would, we're not looking to exclude them as a special occasion facility. And I think they quite easily can meet the requirements of the special occasion facility. And I would also point out that you're, although it's, I, I admit it's, it's less likely, but if an opera house wanted to open up just for the sake of spreading opera to the world and not charging anyone, it would be no different than the situation of the church. And you wouldn't shut the opera house down because they weren't receiving compensation? Whether we would or not, it would, we wouldn't treat it any differently than we treat the church. Well, yeah, no, I see what you're saying. And then you get to the substantial burden question. If in fact a church had a religious belief that they couldn't take, you know, compensation. I'm sorry. Then I, I hear what you're saying. Can I ask about this protect wine country? The county seems to be in a pretty tough position here. It seems to me you have tried to accommodate Calvary Chapel here and you keep getting sued. And you've lost one. You've settled one. Do you have any sense, and it probably doesn't matter for purposes of the current case, but what's going on with protect wine country? Are they, is your view that they are out, you know, against Calvary church specifically or religion in general, or they just don't want large congregations of any sort in, in protect wine, in, in the wine country? Well, first I really appreciate the fact that you recognize that the county has very much tried to help Calvary. It has, it, it. But wine seems to win over religion every time. Well, only in this particular area. No, and it doesn't win over religion. That's the thing. It also wins over opera houses and dance studios and all the other public assemblies. And, and I do think that is a very, very legitimate thing for a jurisdiction to do in a wine growing area to try to choose carefully and balance between keeping it rural, keeping it agricultural, and at the same time having enough economic activity as to promote and make possible the wine growing. And that's, that's the sense behind this zoning ordinance. But, but going back to your, your honest question on protect wine country, um, there are, there are a number of things that plaintiff can do that it just has chosen not to do that absolutely are unaffected by protect wine country and, and the settlement. Well, I, I mean, they've tried to do a few things and they, and the county keeps getting sued whenever you try and work with. I don't know a few things. There was at least two. But, but those were, you know, those were fair enough. Protect wine country, I guess, has a right to come in. I mean, this is. Well, and I'm just wondering what drives them. And the reason why I'm asking this is, again, it may not be relevant for here, but as Judge Callahan has pointed out, if there is an as-applied challenge, then that's going to become a big matter. And if protect wine country steps in, I'm wondering if there's evidence that they have animus towards Calvary Church or other religions. And if they do, and if the county works with protect wine country to exclude or limit in some way Calvary Church, is the, is the county then in some future litigation going to, or the bad motives, if they exist, of protect wine country going to be imputed to the county as part of their actions? Well, well, I, I absolutely hope not because that is not how the county feels. I mean, outside of Vatican City, I don't know that you could find a jurisdiction as religion-friendly as Riverside County. And including to the purposes, the genuine purposes of this, of, of RLUIPA, which, which when it's misused, as I think it is absolutely being misused in this case, hurts RLUIPA because it means that it doesn't become something where you're really protecting legitimate burdens on religion, but you're asking for special privileges that no one else can get. Well, but they're not, in their view, they're not asking for special privileges. They're saying you're allowing secular uses and you're not allowing religious uses. You have a different of, you have a different interpretation of the, of the ordinance. But I don't, Your Honor, I don't think there is a different interpretation that can be made as to the fact that for a special occasion facility, secular uses and religious uses are treated exactly the same. Well, with all due respect, your employees made those arguments in their deposition, so I'm not sure you can say there's no plausible argument there. Well, one employee. Two. Well, no, because the second one specifically, there is a difference, Your Honor, and it's not an important difference. But as to Mr. Ross, all I can say is that, to me, the difference is Ms. Nahn was absolutely focusing on the practice under the ordinance, and she was very clear about that. And I'd urge you to look back at that testimony, and I, I, I, I, I think you can take, to use Your Honor's phrase, I think you can take it to the bank, that she was saying that churches were treated the same as secular institutions, secular assemblies, for purposes of coming into a special occasion facility. What Mr. Ross was doing, and in a very confused way, because he kept saying, well, I'd have to check with county council, I'd have to check with county council, was giving his own individual legal interpretation of what he thought the ordinance did. And, and I think there's a very large difference there. And, oh, I still have some time. Yeah, you're over time now. Over time. But if, if either of my colleagues have any questions. All right, thank you very, thank you very much. All right, you heard Judge Owens wants to hear your. Very anxious to get to that. Yes. Let's hear it. First, as an introduction to that, the county's interpretation at this point in time is that really a religious use cannot always be religious. They quoted, in quotes at, excuse me, on pages 26, 35, and 45, they say, the usage of real property by a church exclusively as a church is prohibited in the CV zone. That's in the appellee's brief. A church may not operate exclusively as a church in the citrus vineyard zone and wine country zones. Well, but does, can't that also be consistent with a view that they have to still operate as a special occasion facility, which includes a winery, which you guys are proposing. You're going, you're going to be a church that grows wine. That grows grapes. 75% vineyards. We're happy to comply with that. The distinction here is that in a non-religious assembly can always be non-religious. Yeah, but they also have to grow grapes as well. That's right. And that's, that's not, that's not the issue. The issue is a non-religious assembly can always be non-religious, but a religious assembly who comes in cannot always be religious. And here's the analogy. This is not different from a government employer putting out a job description for a new employee saying we are an equal opportunity employer. When the Muslim applicant comes along and applies, the government employer says, go ahead and apply for the job. Just don't be Muslim 100% of the time or you don't qualify. Title VII protects a category. Title VII, one of the categories it protects is, is the religious belief of an individual. Whereas our LUPA does the same thing. It protects a religious use of land and specifically defines the religious use of land as religious exercise. It's a category it protects. But how are you being prohibited from doing that? You just heard the county. I understand you don't believe them, but I think at this point you've got to put them to the test and apply. And what do you think that they're not going to allow you to do? I can foresee a couple of things. I don't think they're going to allow you to build the administration building. Now, are you, do you, is that a substantial burden to your religion if they deny that? Your Honor, frankly, it's, I, I, it, it potentially would be. I don't know. We're not even there yet. But our, our application is irrelevant. There's plenty of giant Disneyland type wineries that have multiple special occasion facilities. You name it. We've put it in our brief. You can see it. Their concept that this is a mini city is kind of a joke when you've got down the street adjacent to the property, 1600 seat amphitheater, chapels, wedding pavilions, et cetera, for the Mount Palomar winery. What's relevant here is simply looking at the, looking at the statute. And when looking at the statute and their interpretation. The county is telling us, I mean, you're telling us that the county is coming up and making a misrepresentation to this court that churches are allowed under this. Absolutely. They are absolutely misrepresenting. When you look at page 26 of their own brief, the issue is you cannot exclusively be a church. The church, what they're telling us is you can come in and all of the mounds of evidence show, oh, you can be a temporary church. You can rent on a temporary basis. What does that mean to be a temporary church? I couldn't tell you, Your Honor. It basically means maybe you can come in and rent a building for a marriage retreat for a weekend. Maybe you can come in and have a Bible study once in a while. Maybe you could come in and have a mayor's prayer breakfast once a year. But you cannot exist as a church. You cannot. This is why Herlovitch exists. Let me just tell you, that interpretation, number one, has been disavowed before this court. And number two, I don't think it's consistent with the ordinance. Now, unfortunately for the county, it is consistent with what their employee, Ross, said. But they've disavowed that. Not only what their employee, Ross, said, but what their other employee, their other 30B6 witness said, Paivon, not only what their statements of uncontroverted fact and their admissions in the motions for summary judgment down below, in addition to request for admission number five, where they admitted that religious uses, a church is not permissible under the country, request for admission number five, and in their own, on page 26, 35, and 45 of their own brief, and how do they come here today and say, somehow it's equal terms under our LUPA for a church. It's OK, just as long as you're not always a church. That's like saying, it's OK. I'm not going to discriminate against you and your employment just as long as you're not 100% Muslim. That's a clear violation. I don't know if it's exactly the same. I will say that what both of you have said here is not insignificant because we have something called the comeback cases. It would be very likely that all of you, if you come back again, would see the same panel because when a case is related, we assign cases at random, but when other panels have assigned it first to the panel that has familiarity with it. Be careful what all of you say and be careful what you ask for because this may not be the last time we see each other. Did any of my colleagues have additional questions? OK, you've both used your time. Thank you both for your argument in this case. This will be submitted.
judges: Callahan, Owens, Nelson